IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILBERT SAMPSON                    *

    Petitioner,                    *          Criminal No. RDB-10-00775

      v.                          *
                                                      Civil Action No. RDB-13-2781
UNITED STATES OF AMERICA           *

    Respondent.                    *

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM OPINION

Petitioner Wilbert Sampson ("Petitioner" or "Sampson") was convicted by a jury of conspiracy to distribute and possess with intent to distribute heroin (Count One),[1] in violation of 21 U.S.C. §§ 846 & 841(a)(1). Thereafter, this Court sentenced Petitioner to ninety months of imprisonment and five years of supervised release.[2] Judgment, ECF No. 321. Petitioner noted an appeal (ECF No. 325) to the United States Court of Appeals for the Fourth Circuit, which affirmed Sampson's conviction. *See United States v. Sampson*, 519 F. App'x 782 (4th Cir. 2013).

Petitioner then filed the pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 412). Petitioner claims that he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment to the United States Constitution, U.S. Const. amend. VI. He includes various arguments in support of this claim, all of which involve his attorneys' alleged failures to object to and raise certain issues

---

[1] The violation of 21 U.S.C. §§ 846 & 841(a)(1) was the sole count charged in the Superseding Indictment.
[2] Due to Sampson's lengthy criminal record, he qualified as a Career Offender under the United States Sentencing Guidelines § 4B1.1. *See* Judgment.

in his defense. The Government then filed a Response (ECF No. 417). Petitioner subsequently filed a Motion to Appoint Counsel (ECF No. 423), and then a Motion to Supplement/Amend his Motion to Vacate (ECF No. 424). In those supplemental papers, Sampson asserts various additional arguments relating to the ineffective assistance claims in his Motion to Vacate.

Next, Sampson filed a Motion to Expedite Ruling (ECF No. 433) as to his Motion to Vacate and a Motion for Order to Vacate, Set Aside and Discharge Sentence(ECF No. 445). Sampson then submitted a Motion for Retroactive Application of Sentencing Guidelines pursuant to 18 U.S.C. § 3582 (ECF No. 452).[3] Finally, Petitioner filed a Motion to Proceed in Forma Pauperis (ECF No. 453). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014).

For the reasons that follow, Petitioner Wilbert Sampson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 412) is DENIED; Petitioner's Motion to Appoint Counsel (ECF No. 423) is DENIED;[4] Petitioner's Motion to Supplement/Amend his Motion to Vacate (ECF No. 426) is GRANTED *EX POSTO FACTO*;[5] Petitioner's Motion to Expedite Ruling on his Motion to Vacate (ECF No. 433) is

---

[3] Sampson seeks a reduction of his sentence pursuant to Amendment 782 of the United States Sentencing Guidelines. Petitioner's case has been identified as a case to which Amendment 782 may be applicable, thus his Motion is currently under review.

[4] There is no Sixth Amendment right to counsel in collateral proceedings. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987). A court may appoint counsel to a *pro se* litigant seeking § 2255 relief if the court determines "that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Rule 8(c) of the Rules Governing § 2255 Proceedings for the United States District Courts provides that a court must appoint counsel only "[i]f an evidentiary hearing is required." *See* Rule 8(c) of the *Rules Governing Section 2255 Proceedings*. As Petitioner has adequately presented his claims and grounds for relief, there is no reason to appoint counsel at this time. The interests of justice do not require appointment of counsel, and no evidentiary hearing is necessary in this matter.

[5] Following submission of his Motion to Supplement/Amend, this Court received correspondence (ECF No. 427) from Sampson correcting his Motion to Supplement/Amend by adding a signature. To the extent that correspondence constituted a Request for Leave to Correct/Amend the Motion to Supplement/Amend, that

DENIED as MOOT; Petitioner's Motion for Order to Vacate, Set Aside, and Discharge Sentence (ECF No. 445) is DENIED as MOOT;[6] and Petitioner's Motion to Proceed in Forma Pauperis is DENIED as MOOT (ECF No. 453).[7] Petitioner's Motion for Retroactive Application of Sentencing Guidelines pursuant to 18 U.S.C. § 3582 (ECF No. 452) will remain pending review of his Amendment 782 eligibility. In sum, Petitioner's nearly incomprehensible Motion to Vacate asserts numerous conclusory and unsupported allegations in an effort to renew his chief defense theory. Absent any factual development, Petitioner's claims must be dismissed.

## BACKGROUND

The facts of this case have been detailed at length elsewhere, so only a brief summary is included here.

On December 15, 2010, a federal grand jury indicted Sampson, along with Charles Galloway ("Galloway") and several others, with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1). *See* Indictment, ECF No. 1. On December 14, 2011, Sampson and Charles Galloway were charged in Count One of a superseding indictment with conspiracy to

---

request is GRANTED *EX POSTO FACTO*, as it was considered in disposing of the instant Motion to Vacate.

[6] Although difficult to discern, Petitioner's Motion for Order appears to reiterate the grounds on which he moved to vacate his sentence pursuant to § 2255, while also raising several vague and conclusory allegations of misconduct by the Government. To the extent his Motion for Order reasserts claims already brought in the Motion to Vacate, those claims will be addressed and dismissed pursuant to this Court's discussion of that Motion to Vacate. Petitioner's Motion for Order to Vacate is, thus, DENIED as MOOT. Sampson's additional contentions of Government misconduct are frivolous and nearly incomprehensible. Accordingly, these claims—made without any factual or legal support—must be dismissed and need not be addressed further. *See United States v. Dyess*, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding that the district court did not err in considering only those claims in 2255 petition supported by facts and argument, rather than reviewing all forty claims asserted by the petitioner, where the additional claims consisted solely of unintelligible and conclusory allegations).

[7] This Motion is unnecessary as Sampson was deemed indigent at trial. *See* Fed. R. App. P. 24(a)(3); *see also* CJA 20, ECF No. 29 (noting Richard B. Bardos as court-appointed counsel for Petitioner).

distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. *See* Superseding Indictment, ECF No. 157. The charge stems from events that occurred between January 2009 through December 2010 in the State of Maryland.

A jury trial commenced on January 16, 2012. At trial, the Government contended that during the process of their investigation of Charles Galloway, a large-scale heroin dealer, members of the Drug Enforcement Agency ("DEA") discovered that Galloway and several other individuals were engaging in an international illegal drug conspiracy to bring heroin from Mexico, and eventually, to the Baltimore, Maryland area. The Government asserted that their investigations of Galloway and other members of the conspiracy led them to identify Petitioner Wilbert Sampson as a participant. Regarding Sampson's role in the conspiracy, the Government claimed that Galloway received quantities of heroin from a supplier and distributed those quantities to various street-level retailers, one of whom was Sampson.

As proof of Sampson's participation in the conspiracy and his connection to Galloway, the Government introduced evidence of conversations obtained from wiretaps on Galloway's cellular telephones. According to the Government, those conversations involved discussions between Galloway and Sampson using coded narcotics references. The Government presented five primary pieces of evidence to prove Sampson's identification as a participant on the wiretapped calls, including (1) Baltimore City Police Detective Keith Sokolowski's[8] use of Global Positioning Signal ("GPS") pings from a phone intercepted on

---

[8] Detective Sokolowski was the lead investigator in the conspiracy case against Charles Galloway, Sampson and various other co-defendants.

one of the wiretapped calls to track that phone to a location where Detective Sokolowski identified Sampson; (2) a cellular telephone recovered from Sampson that allegedly matched the cellular telephone used in one of the wiretapped calls; (3) recordings of jail calls made by Sampson, which the Government argued matched the voice on the wiretapped calls; (4) Detective Sokolowski's testimony that the voice on the wiretapped calls matched Sampson's voice based on Detective Sokolowski's previous interactions with Sampson on July 13, 2010; and (5) the testimony of DEA analyst Rosemarie Morales that, although the cellular phone allegedly used in the wiretapped calls was subscribed to a man named Donnell Palmer in 2010, the phone was previously registered to Sampson in December of 2007 at the exact same address as the address listed for Donnell Palmer's current subscription.

Sampson's trial counsel attacked the strength of the Government's evidence both as to the elements required to prove a conspiracy, as well as the amount of heroin attributable to Sampson. He countered that the Government never seized any drugs from Sampson nor was there any evidence the he engaged in any drug-related transactions. Counsel also disputed the veracity of the evidence relating to the wiretapped phone calls, arguing that it was not Sampson's voice on the those calls with Galloway. Further, Petitioner's trial counsel contended that the phone allegedly used on the wiretapped calls was not the same phone that Detective Sokolowski recovered from Sampson during their encounter on July 13, 2010.

At the close of evidence, defense counsel moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure on two grounds. First, he argued that this Court should enter judgment for Sampson on the conspiracy charge as a whole because the Government's evidence was insufficient to prove the elements required for conspiracy

under § 846. Alternatively, he requested that this Court grant a judgment of acquittal as to the aggravated level of the offense charged in the Superseding Indictment. Mr. Bardos argued that the Government had not presented sufficient evidence to prove even the lower aggravated drug offense threshold under §841(a)(1) of 100 grams or more of heroin, much less the Superseding Indictment's charge for one kilogram or more—the highest aggravated offense threshold available under the statute. *See* Trial Tr., 4-5, January 20, 2012, ECF No. 313. He asserted that this Court should, therefore, remove the specific drug quantity from the Superseding Indictment and only allow the case to move forward to the jury on the lesser included offense for an unspecified amount of heroin. *Id.* By removing the drug quantity, Sampson faced no mandatory minimum sentence, and the maximum potential penalty decreased from forty years to twenty years. *Id.* at 20.

After a hearing on the matter, this Court ultimately denied the Rule 29 Motion with respect to the underlying conspiracy charge but granted a judgment of acquittal as to the drug quantity issue. In so doing, this Court held that the Government failed to present any evidence "from which a rational finder of fact could find . . . without gross speculation that [Sampson] was involved in more than a hundred grams of heroin." *Id.* at 31 (alteration in original). Accordingly and upon agreement by both parties, this Court amended the Superseding Indictment by replacing the specific threshold drug quantity of "one kilogram or more of heroin" with language indicating an unspecified amount of heroin.[9] Trial Tr., 101, January 23, 2012, ECF No. 358. Thus, the sole charge submitted to the jury was for

_____

[9] The amended Superseding Indictment, as summarized during jury instructions, charged Sampson with conspiracy to "knowingly, intentionally and unlawfully distribute and possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841 (a)(1), as well as 21 United States Code, Section 846." Trial Tr., 101, January 23, 2012, ECF No. 358.

conspiracy to commit the lesser included offense of § 841 (a)(1) involving an unspecified drug quantity. The jury subsequently returned a verdict of guilty. *See* Jury Verdict, ECF No. 226.

This Court held a sentencing hearing on May 9, 2012. During the hearing, both sides presented arguments regarding the appropriate drug quantity attributable to Sampson for purposes of sentencing. This Court ultimately attributed 7.5 grams of heroin to Sampson. This amount established a base level offense of fourteen under Section 2D1.1(c)(13) of the Sentencing Reform Act of 1984, as modified by *United States v. Booker*, 543 U.S. 220 (2005). Due to Sampson's prior criminal record, he qualified as a career offender under Section 4B1.1 of the guidelines and consequently faced a significantly harsher sentence. *See* Sentencing Tr., 51, May 9, 2012, ECF No. 335. After weighing his relatively small role in the conspiracy and the small quantity of drugs involved against his prior criminal record, this Court sentenced Sampson to a ninety-month term of imprisonment.

On May 14, 2012, Sampson noted an appeal of his conviction to the United States Court of Appeals for the Fourth Circuit. Thereafter, the Fourth Circuit affirmed this Court's ruling on the Rule 29 Motion and Petitioner's conviction on direct appeal. *See United States v. Sampson*, 519 F. App'x. 782 (4th Cir. 2013).

## STANDARD OF REVIEW

This Court recognizes that Petitioner is *pro se* and has accorded his pleadings liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2)

the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to a collateral attack. *Hill v. United States,* 368 U.S. 424, 426–27 (1962) (citing 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). The scope of a § 2255 collateral attack is far narrower than an appeal, and a "collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982) (citations omitted). Thus, procedural default will bar consideration under § 2255 of any matter that should have been raised at trial or that could have been pressed on appeal but was not, unless the petitioner demonstrates "cause excusing his double procedural default" and "actual prejudice" resulting from the error. *Id.* at 167–68 (internal quotation marks and citation omitted).

Although the doctrine of procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). To state a claim for relief under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a

strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that Petitioner demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687.

In applying the *Strickland* test, the United States Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. The Fourth Circuit has noted further that the mere possibility of a different trial result does not satisfy the burden of proving prejudice placed on the defendant. *See Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).

## **DISCUSSION**

In his Motion to Vacate pursuant to 28 U.S.C. § 2255, Sampson alleges that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Due to the confused nature of his claims for relief, it is difficult to discern the precise ways in which he allegedly received ineffective assistance of counsel. It appears, however, that he asserts three primary failures of trial and appellate counsel, each of which he attempts to support with several subsidiary claims. First, Sampson argues that trial and appellate counsel failed to object to various issues stemming from the removal of the drug quantity from the Superseding Indictment.[10] Second, he claims that both trial and appellate counsel failed to "adequately object" to the sufficiency of the Government's evidence supporting his drug

---

[10] It is not entirely clear whether Petitioner's *Apprendi*-based ineffective assistance claims attack the validity of the amended Superseding Indictment itself, the jury instructions summarizing that indictment, or both. In construing Sampson's *pro se* materials liberally, this Court will assume both are at issue.

conspiracy conviction. Finally, Sampson contends that trial and appellate counsel failed to pursue suppression of a cellular telephone recovered from Petitioner, as well as law enforcement's retrieval of data through the use of GPS pings from Petitioner's phone.

*1. Ineffective Assistance – Removal of the Specific Threshold Drug Quantity*

Sampson puts forth two primary arguments for ineffective assistance of counsel premised on the removal of the specific drug quantity from the Superseding Indictment and the summary read to the jury during jury instructions.[11] First, Petitioner asserts that this Court erred under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), by not treating the specific drug quantity originally charged in the Superseding Indictment as a required element of the charge that must be submitted to the jury and proved beyond a reasonable doubt. Second, he claims that this Court's removal of the aggravated threshold drug quantity from the Superseding Indictment amounted to a constructive amendment. Sampson appears to further contend that trial counsel was ineffective in failing to object to these alleged errors

---

[11] Petitioner also includes two additional claims for ineffective assistance based on the alleged amendment to the Superseding Indictment. In sub claim 1(c) of his Motion to Vacate, Sampson contends that trial counsel was ineffective for failing to make a lenity argument. In sub claim 1(d), he asserts that trial and appellate counsel "was ineffective for failure to object to, mitigate, and raise on direct appeal the judge's drug amount determination exceeded defendant's mandatory minimum sentence." Mot. to Vacate, 12-13. Even under the liberal construction accorded to *pro se* petitioners, this Court is unable to make sense of these claims. As to sub claim 1(c), the rule of lenity "is invoked when a criminal statute is ambiguous and has the effect of directing a court to interpret an ambiguous criminal statute in such a way that results in a more lenient punishment for the defendant." *United States v. Collins*, 415 F.3d 304, 317 n.7 (4th Cir. 2005). Sampson makes no argument alleging ambiguity in either the sentencing guidelines or any statute applied in this case. As for sub claim 1(d), Petitioner's assertion that his sentence exceeded the mandatory minimum is, as an initial matter, nonsensical. A mandatory minimum sets a floor, not a ceiling, for the sentencing judge. Furthermore, the record clearly reflects that no mandatory minimum applied in this case. *See generally*, Sentencing Tr., May 9, 2012. This Court can, thus, evaluate neither the reasonableness of counsels' decisions relating to these claims, nor any resulting prejudice to Petitioner, as required by *Strickland*. As Sampson offers no further facts or support for either claim, this Court need not investigate these allegations any further. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").

and that appellate counsel was ineffective for failing to raise them on appeal.[12] Each argument will be addressed in turn.

Petitioner claims that this Court committed an *Apprendi* error when it removed the specific drug quantity threshold from the Superseding Indictment and the summary of the charge included in the jury instructions. He appears to argue that both trial and appellate counsel provided ineffective assistance, as they failed to object to these issues at trial and on appeal. In support of this contention, Petitioner incorrectly asserts that after *Apprendi*, a court must treat drug type and quantity as elements of a 21 U.S.C. § 841 offense that "must be charged in the indictment" and proved to the jury beyond a reasonable doubt. Mot. to Vacate, at 16 (citing *Apprendi*, 530 U.S. at 490).

It is well established, however, that *Apprendi* applies only in those limited circumstances in which a sentence exceeds the statutory maximum for the offense underlying the conviction. *See Apprendi*, 530 U.S. at 490 ("Other than the fact of prior conviction, any fact that *increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); *see also United States v. Promise*, 255 F.3d 150, 156-157 (4th Cir. 2001) (en banc), *cert denied* 535 U.S. 1098 (2002) ("*Apprendi* dictates that in order to authorize the imposition of a sentence *exceeding the maximum allowable* without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e. charged in the indictment and proved to the jury beyond a reasonable doubt.")

---

[12] This Court notes that it is somewhat unclear whether Petitioner challenges the actions of his trial counsel, his attorney on appeal, or both. In his Motion to Vacate, Petitioner refers to the plural "counsels" but also states that "counsels was ineffective when they failed to object to, mitigate, and raise on *direct appeal* . . . ." Mot. to Vacate, at 12 (emphasis added).

(emphasis added). In *Promise*, the United States Court of Appeals for the Fourth Circuit emphasized the limited nature of its holding and *Apprendi*'s application, explaining,

> We emphasize that we do not hold that all facts that could serve to increase a defendant's sentence must be found by the jury beyond a reasonable doubt. Instead, we merely hold that the maximum penalty that may be imposed upon a defendant is the maximum penalty allowed by the statute upon proof of only those facts alleged in the indictment and found by the jury beyond a reasonable doubt. Once this maximum penalty is established, a fact (sentencing factor) that may increase the actual sentence imposed within that maximum is not subject to the same requirements

255 F.3d at 157 n.5.

In this case, the defendant was charged with conspiring to commit a violation of § 841 (a)(1) involving an unspecified quantity of heroin, for which the maximum statutory penalty is 240 months.[13] 21 U.S.C. § 841(b)(1(C); *see United States v. White*, 238 F.3d 537, 542 (4th Cir. 2001), *cert denied* 532 U.S. 1074, (2001); *see also United States v. Benenhaley*, 95 F. App'x 501, 503 (4th Cir. 2004) (noting that 21 U.S.C. § 841(b)(1)(C) relates to "unaggravated" drug trafficking offenses, for which no specific drug quantity need be specified in the indictment and found by a jury beyond a reasonable doubt). Any sentence within the 240-month maximum penalty for violations involving an unspecified drug quantity thus does not implicate *Apprendi. See White*, 238 F.3d 537 at 542.

Regardless of whether Petitioner attacks his trial or appellate counsel, it is clear that neither the Superseding Indictment itself nor the summary provided to the jury triggers *Apprendi*. As explained *supra*, after granting Sampson's own attorney's Rule 29 Motion, this Court removed the aggravated specific drug quantity from the Superseding Indictment. This

---

[13] Any person convicted under § 846 of conspiring to commit an offense covered under § 841 is subject to the same penalties as those prescribed for direct violations of § 841. *See* 21 U.S.C. § 846.

Court then submitted only the lesser charge of conspiring to commit a violation of § 841(a) involving an unspecified quantity of heroin to the jury. The jury ultimately found Sampson guilty of that lesser included offense, and this Court sentenced him to a ninety-month term of imprisonment. As Sampson was convicted of a violation involving an unspecified quantity of drugs and sentenced well within the 240-month statutory maximum for such unaggravated offenses, the jury was not required to make a finding as to a specific drug quantity under *Apprendi. See United States v. Grin*, 64 F. App'x 885, 886 (4th Cir. 2003) (holding that *Apprendi* did not apply and indictment was not defective where defendant was charged with conspiracy to commit a violation of § 841(a) involving unspecified drug amount and sentence did not exceed the 240-month statutory maximum under 21 U.S.C. § 841(b)(1)(C)). Sampson was simply not subject to any statutorily enhanced maximum penalty in this case under 21 U.S.C. § 841(a) calling for additional indictment proof and/or a jury finding. *See United States v. Butler*, No. CIV. S 02-561, 2002 WL 32366001, at *1 (D. Md. Mar. 5, 2002) (citing *Promise,* 255 F.3d 150). Since no *Apprendi* error existed, this Court cannot conclude that either counsel was objectively unreasonable under *Strickland's* first prong for failing to raise an *Apprendi* objection.

This Court further notes that it is puzzling, at the very least, to suggest that trial counsel was objectively unreasonable in failing to object to the removal of the specific threshold drug quantity, as it resulted from Petitioner's own Rule 29 Motion. Indeed, that motion not only eliminated Sampson's exposure to a mandatory minimum of five years, but also reduced the applicable statutory maximum from forty years to twenty years. Counsel's decision on this matter was strategic and falls within the "wide range of reasonable

professional assistance." *See Evans v. Thompson*, 881 F.2d 117 (4th Cir. 1989). Rather than suffering prejudice, Sampson in fact benefitted from trial counsel's tactical decision. He has thus failed to establish a violation of his Sixth Amendment right to counsel with respect to this first claim. Sampson fails to offer any facts to overcome this presumption much less establish any prejudice.

In his next claim for ineffective assistance of counsel, Petitioner attempts to call into question the Superseding Indictment and related jury instructions on different, albeit equally unavailing, grounds. He argues that the removal of the specific drug quantity amounted to a constructive amendment of the Superseding Indictment and "omitted the jury instructions of the element of intent." Mot. to Vacate, at 18. According to Sampson, the removal of the specific drug quantity created a fatal variance in the conspiracy charge in violation of his rights under the Fifth Amendment, U.S. Const. amend. V.[14] He asserts that trial and appellate counsel were ineffective in failing to raise this point.

"The Fifth Amendment . . . guarantees that a criminal defendant will be tried only on charges in a grand jury indictment . . . [and] . . . only the grand jury may broaden or alter the charges in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). A constructive amendment effectively broadens the basis for a conviction beyond the crimes charged in the indictment. *Id.*; *see also United States v. Malloy*, 568 F.3d 166, 178 (4th Cir. 2009) (explaining that a constructive amendment—sometimes referred to as a fatal variance—

---

[14] This assertion is yet another conclusory allegation as Petitioner fails to explain how the elimination of the specific drug amount from the indictment eliminates the element of intent. It is unclear what "element of intent" Petitioner is referring to, as the charge for conspiracy contains no element requiring proof of intent to conspire as to a specific drug quantity. *See* 21 U.S.C. § 846. As such, this Court will consider only whether the elimination of the specific drug quantity constituted a constructive amendment in violation of the Fifth Amendment.

occurs when the government, through its presentation of evidence or its arguments, or the district court, through its instructions to the jury, or both, expands the bases for conviction beyond those considered by a grand jury). Any variance that does not "change the elements of the offense charged such that the defendant is actually convicted of a crime other than that charged in the indictment," is not a fatal variance. *Randall*, 171 F.3d at 203. This brand of variance "does not violate a defendant's constitutional rights . . . either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Id.*

The statute under which Sampson was charged, 21 U.S.C. § 846, is a conspiracy statute. *See United States v. Collins*, 415 F.3d 304 (4th Cir. 2005). It provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." *Id.* at 314 (citing 21 U.S.C. §846). Count One of the Superseding Indictment charged Sampson with conspiracy to violate § 841(a)(1)–the underlying substantive offense—which makes it a crime to intentionally "manufacture, distribute, or dispense or possess with the intent to manufacture, distribute, or dispense a controlled substance." 21 U.S.C. § 841(a)(1). The elements of this charge are: (1) an agreement between two or more persons to engage in conduct that violates a federal drug law—here, to distribute or possess narcotics with intent to distribute; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy. *United States v. Hickman,* 626 F.3d 756, 763 (4th Cir.2010). Noticeably absent from the substantive elements of the offense is any reference to drug quantities. Kept

separate from the statutory elements of a § 841(a) violation, drug amounts instead come into play under § 841(b)'s penalty provisions. § 841(b) sets out the penalties for individuals who violate § 841(a), which increase in severity as the drug quantity increases. *Collins*, 415 F.3d at 314.

For offenses involving specific threshold quantities of drugs,[15] "known as aggravated drug trafficking offenses," the penalties under § 841(b) are more severe. *United States v. Angle*, 254 F.3d 514, 518 (4th Cir. 2001). The most stringent penalty for heroin mandates a ten-year minimum sentence and a maximum term of life imprisonment for a violation of § 841(a) involving one kilogram or more—the same violation originally charged in the Superseding Indictment against Sampson. *Collins*, 415 F.3d at 314. Section 841(b) also, however, establishes two lower level offenses, chargeable as lesser included offenses, for violations involving smaller quantities of heroin.[16] Section 841 (b)(1)(B) imposes a mandatory minimum of five years and a maximum forty-year term of imprisonment for offenses that meet the lesser threshold quantity of 100 grams or more of heroin. *Id.* Finally, a violation of § 841(a) that satisfies the lowest threshold for an "unspecified quantity of heroin" is subject

---

[15] "Specific threshold drug quantities" are those quantities of drugs set forth in 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), a finding of which subjects a defendant to a sentence of ten years to life imprisonment or five to forty years imprisonment. *United States v. Promise,* 255 F.3d 150, 152 n.1 (4th Cir. 2001) (en banc).

[16] In determining what constitutes a lesser included offense for the purpose of Rule 31(c) of the Federal Rules of Criminal Procedure, courts apply the "elements test." *See Schmuck v. United States*, 489 U.S. 705, 708-09 (1989). The elements test permits lesser offense instructions "only in those cases where the indictment contains the elements of both offenses and thereby gives notice to the defendant that he may be convicted on either charge." *Id.* at 718. Also, as an independent prerequisite for a lesser included offense instruction, the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater. *Id.* at 716 n.8 (citing *Keeble v. United States,* 412 U.S. 205, 208 (1973)). Here, there is no question that a violation of § 841(a)(1) involving one of the lower drug amount thresholds may be appropriately submitted to the jury as a lesser included offense, where the indictment originally charges a violation involving a higher threshold drug quantity. Such an indictment "contains the elements of both offenses," as the statutory scheme of § 841 separates drug quantity from the elements of the substantive offense under § 841(a). *See Cabrera-Beltran,* 660 F.3d at 753.

to § 841(b)(1)(C)'s penalty provision under which there is no mandatory minimum and the maximum term of imprisonment is not more than twenty years. *Id.*

As to these lesser included offenses, courts are quite clear that even when not explicitly charged in the indictment, a conviction on the basis of a lesser included offense is permissible as "an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c); *see also United States v. Baker*, 985 F.2d 1248, 1258 (4th Cir. 1993) ("Whether the individual was charged in the indictment with the lesser-included offense is irrelevant."). Thus, "[a] defendant charged with conspiracy to import or distribute an amount of a controlled substance can, if the evidence warrants, be convicted of one of the lesser included offenses based on a smaller amount of the substance." *United States v. Cabrera-Beltran*, 660 F.3d 742, 753 (4th Cir. 2011) (internal quotations and citation omitted).

A grand jury originally found probable cause to indict Sampson on the aggravated drug charge of conspiring to distribute and possess with intent to distribute one kilogram or more of heroin. At trial, pursuant to defense counsel's successful Rule 29 Motion, this Court entered judgment for Sampson on the aggravated drug trafficking charge. However, this Court sent the case to the jury on the lesser included offense after ruling that the Government's evidence was sufficient to permit a finding as to Sampson's involvement in at least some quantity of heroin less than 100 grams. *See* Trial Tr., 31, January 19, 2012. As this lesser included offense was necessarily included in the original offense charged, there is no variance. *See Cabrera-Beltran,* 660 F.3d at 753 (no constructive amendment where indictment charged defendant with conspiracy to commit a violation of § 841 involving "5 kilograms or more" of cocaine but jury ultimately found the defendant guilty of an amount less than that

alleged in the indictment). Moreover, the statutory scheme of § 841 separates drug quantity from the elements of the substantive offense under § 841(a), thus Petitioner's conviction was unaffected by the amendment of the drug quantity at trial. *See id.* at 314 ("Guilt of the substantive offense defined in § 841(a) is not dependent upon a determination of the amount or type or narcotics distributed.").

As the removal of the drug quantity was not a constructive amendment, neither trial counsel nor appellate counsel performed deficiently in failing to raise a Fifth Amendment violation. Further, Sampson provides no details as to how raising such arguments would create a reasonable probability of a different outcome at trial, as required under *Strickland*. Petitioner's claims for ineffective assistance of counsel arising from the removal of the specific drug quantity must, therefore, be dismissed.

### 2. Ineffective Assistance – Sufficiency of the Evidence

Next, Sampson contends that insufficient evidence supported his conspiracy conviction, and thus trial and appellate counsel were ineffective for failing to raise this issue at trial and on appeal. In support of this claim, Sampson makes numerous conclusory allegations. For example, he asserts that "[t]here was no direct or circumstantial evidence to connect any of these drug conspiracy transactions to this defendant," and that "the introduction of this information to the jurors was extraneous evidence [and] was too overwhelming for the jurors." Mot. to Vacate, at 19 (alteration in original). He then argues that "[b]y counsel permitting this and not presenting a defense theory [counsel] was ineffective." *Id.* Yet, he provides no evidence to support his allegations. Rather, with these claims, Petitioner seeks to relitigate issues already decided by the Fourth Circuit Court of

Appeals in his direct appeal by couching them in terms of ineffective assistance of counsel. *See United States v. Sampson*, 519 F. App'x 782 (4th Cir. 2013).

As the Fourth Circuit has previously recognized, issues fully litigated on direct appeal cannot be raised on collateral attack. *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (stating a defendant may not "recast under the guise of collateral attack, questions fully considered by this court [on direct appeal]"). The Fourth Circuit reviewed *de novo* this Court's denial of the Rule 29 Motion for judgment of acquittal and the sufficiency of the evidence supporting Sampson's conviction. The Fourth Circuit found no error and ruled that the Government's evidence was sufficient to permit a jury to find beyond a reasonable doubt that Sampson was a known member of a conspiracy. *See Sampson*, 519 F. App'x at 783. As such, Petitioner is precluded from relitigating the validity of this Court's ruling on the Rule 29 Motion and the sufficiency of the evidence with respect his conspiracy conviction.

Even if, however, a genuine issue existed as to the sufficiency of the Government's evidence, Petitioner fails to include any facts that would show that either counsel performed deficiently in this regard. Instead, Petitioner offers nothing more than conclusory allegations against his attorneys. He baselessly asserts that "both the government and the sentencing judge admitted that no such evidence of a conspiracy existed against the defendant, Sampson" and that "the government's case was weak against the defendant, and defense counsel failed to challenge the government's evidence." Mot. to Vacate, at 4-5. Petitioner goes on to claim that "[t]he government, having extreme power and control of cases was permitted to presented a weak case without little or no opposition by defense counsel . . . ."

*Id.* at 11. These statements are speculative at best and fail for lack of any support in the record or otherwise.

Quite to the contrary, Sampson's trial counsel moved under Rule 29 for a judgment of acquittal as to *both* the underlying charge of conspiracy and the drug quantity charged in the Superseding Indictment. *See* Trial Tr., 4-5, January 20, 2012, ECF No. 313. At the hearing on that Motion, counsel argued vehemently against the sufficiency of the Government's evidence supporting the elements necessary to prove the conspiracy charge. *Id.* at 5-8. He argued, *inter alia*, that the Government's evidence with respect to the phone calls between Mr. Galloway and Sampson was insufficient to establish an agreement, as is required for the first element of § 846. *Id.* Similarly, in his brief on appeal, Sampson's appellate counsel argued that "[t]he jury's verdict is not supported by the evidence, which was insufficient as to count one of the superseding indictment" and that "the district court abused its discretion when it denied the appellant's motion for judgment of acquittal." *See* Br. of Appellant at 7, *Sampson*, 519 F. App'x 782 (No. 12-4361). It appears that Petitioner wishes to assign error to his attorneys for failing to convince the jury and judiciary of their positions on these issues. Failing to succeed on a theory of defense, however, is not the same as failing to raise one. Sampson has not and cannot show deficient performance by either attorney as required under *Strickland*, as both attorneys *did* raise arguments regarding the sufficiency of the Government's evidence. Petitioner's claims with respect to these matters must, therefore, be denied.[17]

---

[17] Petitioner also includes additional arguments attacking trial counsel's strategy. He argues that his attorney's various stipulations with the Government during trial "denied and deprived him of a fair trial." Mot. to Vacate, at 19. Specifically, Sampson claims that the stipulations regarding the Government's evidence against other co-defendants allowed for the introduction of "multiple extraneous pieces of evidence" which "caused

*3. Ineffective Assistance – Suppression of Evidence*

Finally, Petitioner asserts that trial counsel was ineffective in failing to pursue suppression of a cellular telephone allegedly seized from Petitioner during an unrelated arrest. Sampson also repeats this same contention with respect to data obtained from cell phone GPS pings from one of the wiretaps on Charles Galloway's phones.[18] Sampson asserts that both the cell phone and the data from the cell phone GPS pings were obtained in violation of his Fourth Amendment rights, U.S. Const. amend IV. He appears to argue that appellate counsel was also ineffective in failing to object to these issues on appeal.

Where counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the Petitioner must prove both that his Fourth Amendment claim is meritorious *and* that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (emphasis added). It is not enough for Sampson to show that the error had some conceivable effect on the outcome of the

---

the jurors to draw negative inferences of guilt" against him. *Id.* at 8-9. He then asserts that in light of the negative effects caused by such "extraneous" evidence, defense counsel should have "requested conscious of guilt jury instructions" and was ineffective in failing to do so. *Id.* at 20. These decisions were a matter of tactics. *See supra* pp. 1, at. 13; *see also Evans v. Thompson*, 881 F.2d 117 (4th Cir. 1989) (holding that an attorney's tactical decisions are entitled to a presumption of reasonableness); *Sellman v. United States*, 92 F.Supp.2d 475, 480 (D.Md.2000) (noting that stipulations are tactical decisions). And, while Sampson may challenge the presumption of reasonableness applied to such tactical decisions, his mere disagreement with those decisions or their outcomes does not make them objectively unreasonable. *See United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) ("The reasonableness of the tactical decision actually made by counsel is of course subject to challenge, but the decision is not unreasonable simply because the client expressed a contrary view."). Petitioner fails to provide any further details to support a finding of deficient performance with respect to either counsel as required under the first *Strickland* prong. These additional arguments by Petitioner are, therefore, insufficient to sustain a claim for ineffective assistance of counsel.

[18] It is not entirely clear from the record whether the GPS pings were retrieved from the same phone allegedly seized from Sampson or from a different phone. As this Court noted during sentencing, however, this distinction is irrelevant, as it "wouldn't in any way affect the jury verdict in light of the evidence that was presented in the case." Sentencing Tr., 36.

proceeding, as "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Jones v. Clarke*, 783 F.3d 987, 992 (4th Cir. 2015) (quoting *Harrington*, 562 U.S. at 111) (internal quotations omitted). "In short, *Strickland* asks whether it is reasonably likely the result would have been different, and the likelihood of a different result must be substantial, not just conceivable." *Id.* (internal quotation marks and citations omitted).

This Court need not consider the merits of Sampson's suppression arguments regarding the cell phone or the GPS data or whether trial and appellate counsel was deficient in failing to raise these issues. Even assuming that his attorneys' tactical decisions not to pursue suppression of these items were objectively unreasonable, Sampson fails to demonstrate prejudice under the second *Strickland* prong. Far from providing sufficient evidence, Petitioner alleges no evidence showing a reasonable likelihood that the jury would not have returned a guilty verdict based on the Government's other evidence of his participation in the conspiracy.

In addition to the evidence retrieved from his cell phone and the GPS data, the Government also presented evidence of recordings of conversations obtained through the wiretap surveillance of one of Charles Galloway's phones, which Galloway "used exclusively for communicating with his street-level narcotics customers." *See* Resp. in Opp'n to Mot. to Vacate, at 7. The Government argued that those conversations were between Sampson and Mr. Galloway about dealing drugs. To establish that Sampson was indeed the person on the other end of these wiretapped conversations, the Government presented recordings of

Sampson's voice on jail calls as well as witness testimony corroborating the sound of Sampson's voice. *Id.* Rather than addressing this evidence, Sampson ignores it. Instead, he inaccurately asserts that "[t]he crux of the entire case relies on a cell phone belonging to the defendant that was taken by Officer Sokolowski in an unrelated separate matter, and was illegally seized and searched for information by Officer Sokolowski that would suit his assumptions of recognizing the defendant's voice years later." Mot. to Vacate, at 5. He continues, "[t]he government stated that they had no evidence of conspiracy against the defendant Sampson, except for the cell phone seized illegally from him to try him from conspiracy." *Id.* at 9. These statements are nothing more than conclusory allegations and are wholly unsupported by the record in this case. As Petitioner offers no basis on which to conclude that the Government's additional evidence would not have been sufficient to support the jury's guilty verdict, his third claim for ineffective assistance of counsel must be denied.

## CONCLUSION

For the foregoing reasons, Petitioner Wilbert Sampson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 412) is DENIED; Petitioner's Motion to Appoint Counsel (ECF No. 423) is DENIED; Petitioner's Motion to Supplement/Amend his Motion to Vacate (ECF No. 426) is GRANTED *EX POSTO FACTO*; Petitioner's Motion to Expedite Ruling on his Motion to Vacate (ECF No. 433) is DENIED as MOOT; Petitioner's Motion for Order to Vacate, Set Aside, and Discharge

Sentence (ECF No. 445) is DENIED as MOOT; and Petitioner's Motion to Proceed in Forma Pauperis is DENIED as MOOT (ECF No. 453). Petitioner's Motion for Retroactive Application of Sentencing Guidelines pursuant to 18 U.S.C. § 3582 (ECF No. 452) will remain pending review of his Amendment 782 eligibility. In sum, Petitioner's nearly incomprehensible Motion to Vacate asserts numerous conclusory and unsupported allegations in an effort to renew his chief defense theory. Absent any factual development, Petitioner's claims must be dismissed.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: November 5, 2015

_____/s/_____
Richard D. Bennett
United States District Judge